■ C. SCHMIDT & SONS, INC., Appellant, v S.D.S. DISTRIBUTING CORPORATION et al., Respondents, et al., Defendant. — In an action, *inter alia,* to foreclose on collateral pledged under a security agreement, to recover the value of goods sold and delivered and to recover damages for breach of contract, plaintiff appeals from so much of an order of the Supreme Court, Kings County (Leone, J.), dated June 14, 1982, as upon its motion to dismiss all the affirmative defenses and counterclaims asserted in the answer of the respondents, denied dismissal of the second through eighth and the tenth affirmative defenses and counterclaims and the ninth counterclaim. Order reversed, insofar as appealed from, with costs, and plaintiff's motion granted in its entirety with leave to respondent S.D.S. Distributing Corporation to replead the fifth affirmative defense and counterclaim and to respondent QM Distributing Corporation to replead the eighth affirmative defense and counterclaim and the ninth counterclaim. The plaintiff is engaged in the manufacture, distribution and sale of beer and other malt beverage products. The respondents S.D.S. Distributing Corporation (SDS) and QM Distributing Corporation (QM) operate as wholesale distributors of the plaintiff's malt beverage products. The individual respondents Robert Sodickson and Elmer B. Sidden are officers and the major shareholders of the respondent corporate distributors. In October, 1977 plaintiff and the defendant SDS entered into a security agreement whereby SDS pledged all of its inventory and receivables to the plaintiff. Paragraph 5.1 of the security agreement provided, *inter alia,* that in the event of a default by SDS under the security agreement or the parties' underlying distributorship agreement, plaintiff could accelerate all outstanding financial obligations and exercise any rights and remedies provided by law. In November, 1977 SDS acknowledged in writing that it was in default. On January 6, 1978 the plaintiff terminated the distributorship agreement with SDS and in February, 1978 SDS agreed to a payment schedule in order to satisfy its indebtedness. As part of the repayment plan, SDS tendered checks to the plaintiff, $98,000 of which were dishonored. Meanwhile, on January 6, 1978 the plaintiff notified QM of its intention to appoint that company as its distributor of Rheingold products in Manhattan and Queens and Schmidt products in Manhattan. In order to secure payment for the products purchased by QM, the plaintiff perfected a security interest by filing a financing statement against certain collateral pledged by that respondent. In March, 1978, QM notified the plaintiff that it could not make the payments called for by the agreements between itself and plaintiff. The action against the individual respondents is premised upon the alleged wrongful diversion of the inventory and receivables of SDS to the detriment of the plaintiff. The answer of the respondents sets forth ten affirmative defenses and nine counterclaims. Special Term dismissed the first and ninth affirmative defenses. On this appeal, plaintiff seeks a dismissal of the other affirmative defenses and counterclaims. The second affirmative defense and counterclaim is asserted by SDS and alleges that plaintiff was grossly negligent in presenting an SDS check for payment when

it knew of or should have known that there were insufficient funds in said respondent's account. The seventh affirmative defense and counterclaim is asserted by QM and seeks recovery for the same acts, i.e., the plaintiff's alleged wrongful deposit of SDS's checks. In the tenth affirmative defense and counterclaim, the individual respondents seek compensation for injury to "their individual credit ratings and personal reputations" because plaintiff's acts and breaches were intentional and constituted a willful and malicious tort against them. Each of these claims fails to allege facts sufficient to constitute cognizable defenses or counterclaims. Accordingly, they are dismissed. In the fourth affirmative defense and counterclaim SDS claims that it is entitled to damages because plaintiff selected the carrier used to deliver the products and that such carrier charged higher rates than others in the same business. In view of the fact that the parties' distributorship agreement granted plaintiff the discretion to choose the carrier and determine the freight rates to be charged back to the SDS, this claim also fails to state a cognizable defense or counterclaim. In the third and sixth affirmative defenses and counterclaims SDS and QM, respectively, seek damages for plaintiff's claimed breach of their distributorship agreements. Before Special Term the plaintiff moved for summary judgment dismissing those claims on the ground that there was no genuine issue of fact with respect thereto and that they lacked merit. The papers submitted by respondents in opposition to that branch of plaintiff's motion for summary judgment were devoid of any evidentiary showing as to how the rights, if any, of the respondents SDS and QM survived their conceded default under the subject agreements. Consequently, summary judgment should have been granted as to these affirmative defenses and counterclaims (see, e.g., *Rosenberg v Del-Mar Div., Champion Int. Corp.*, 56 AD2d 576, 577). The fifth affirmative defense and counterclaim, asserted by SDS, which alleges illegal conduct by plaintiff, and the eighth affirmative defense and counterclaim, asserted by QM, which allege acts by plaintiff in restraint of trade, fail to state a cause of action in their present form. However, it appears that the facts may permit cognizable affirmative defenses and/or counterclaims to be pleaded in that regard. That being so, those respondents are granted leave to replead those defenses and counterclaims. Finally, in the ninth counterclaim QM seeks to enjoin plaintiff from continuing the allegedly wrongful acts complained of, *inter alia,* in the eighth affirmative defense and counterclaim. The ninth counterclaim also fails to state a cause of action. Inasmuch as it has been granted leave to replead the eighth affirmative defense and counterclaim, leave to replead is also granted to QM as to the ninth counterclaim so that it can properly reflect the amended answer of that respondent. Damiani, J. P., Weinstein, Niehoff and Boyers, JJ., concur.